## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **STACEY CHISHOLM,** | : |
| | : |
| **Plaintiff,** | : |
| v. | : |
| | : Civil Case No. |
| **WASHINGTON SUBURBAN** | : |
| **SANITARY COMMISSION D/B/A** | : |
| **WSSC WATER AND JOSEPH BEACH,** | : |
| **CHRISTOPHER CARTER, AND** | : |
| **CARLA REID, IN THEIR** | : |
| **INDIVIDUAL CAPACITIES,** | : |
| | : |
| **Defendants.** | : |
| | : |

………………………………………………………………………………………………

## COMPLAINT AND JURY DEMAND

Stacey Chisholm ("Plaintiff"), by and through counsel, the Law Office of Janice Williams-Jones, brings this action against Washington Suburban Sanitary Commission d/b/a, WSSC Water, Joseph Beach, Christopher Carter, and Carla Reid (collectively, "Defendants") to recover for damages from violations of 42 U.S.C. §1981 *et seq.*, as amended, and common law torts of wrongful discharge, interference with economic relations, and civil conspiracy and states:

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §1331 and 42 U.S.C. §1981.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because those claims arise from a common set of operative facts and are so related to the allegations in the action within the original jurisdiction of this Court that they form part of the same case or controversy.

1

3. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in the State of Maryland.

## THE PARTIES

4. Plaintiff Stacey Chisholm, a Black female, resides at 9710 Traver Street, Bowie, MD 20721. At all relevant times, Plaintiff worked as the Chief IT Governance Officer.

5. Defendant WSSC Water is a bi-county political subdivision of the State of Maryland that provides drinking water and wastewater treatment for Montgomery and Prince George's Counties. WSSC has a principal place of business at 14501 Sweitzer Lane, Laurel, Maryland, 20702.

6. On information and belief, Defendant Joseph Beach ("Beach") resides at 832 E. Belvedere Avenue, Baltimore, Maryland, 21212. At all relevant times, Mr. Beach was WSSC's Deputy General Manager of Administration.

7. On information and belief, Defendant Christopher Carter ("Carter") resides at 4000 Decatur Avenue, Kensington, Maryland, 20895. From 2019-2022, Mr. Carter was WSSC's Chief Information Officer.

8. On information and belief, Defendant Carla Reid ("Reid") resides at 15517 Sir Edwards Drive, Upper Marlboro, Maryland, 20772. At all relevant times, Ms. Reid was WSSC's General Manager/CEO.

9. At all times relevant, WSSC was Plaintiff's "employer" according to an employment contra, and Plaintiff was an "employee" under an employment contract.

## STATEMENT OF FACTS

10. In January 2019, WSSC's former Chief Information Officer ("CIO"), Vennard Wright,

hired Plaintiff as the Chief IT Governance Officer. Plaintiff worked under an employment contract that provided that she could not be terminated for unlawful reasons.

11. As Chief, Plaintiff's duties included supervising employees and working with the CIO to ensure that WSSC complied with applicable regulations, policies, and procedures. Specifically, she led all information technology projects for WSSC, including managing the Project Management, Business Analysis, Quality Management, and Information Technology Asset Management offices.

12. At all times relevant, Plaintiff performed her duties competently and received satisfactory or higher ratings on her annual performance reviews.

13. At the time of Plaintiff's hiring, Reid was WSSC's General Manager/CEO, and Beach (Caucasian male) was its Deputy General Manager.

14. Six months after Plaintiff's employment began, WSSC hired Carter as Chief Information Officer, supervising Plaintiff.

15. Almost immediately after Carter started, Plaintiff's subordinates, all Black or people of color, reported that Carter talked down or condescendingly to them, questioned their intelligence in meetings, and falsely accused them of having performance issues. The staff also said that Carter's attitude was due to racial discrimination.

16. Initially, Plaintiff tried to work with Carter to resolve the staff's concerns, but she later reported Carter's discrimination to his first and second-line supervisors, Beach and Reid.

17. In response to Plaintiff's discrimination complaint, Reid asked to meet with Plaintiff in October 2019 to discuss her concerns. During their meeting, Plaintiff also reported two other issues involving Beach and Carter to Reid, and she asked Reid for guidance.

18. In this regard, she told Reid that her staff accused Carter of discriminating against them and wanted something to be done about it.

19. She also reported concerns about waste and abuse regarding payments for excessive travel for WSSC contractor Cornerstone, Inc. In addition, she cited conflicts of interest and illegal hiring practices concerning Beach and Black & Vetch, a Cornerstone contractor.

20. Following Plaintiff's reports, Reid did nothing to Carter or Beach. Consequently, they continued to engage in the same conduct as if Plaintiff had said nothing to Reid.

21. In December 2019, Plaintiff was diagnosed with cancer and began treatment.

22. In January 2020, her staff reported that Carter continued discriminating against them. This time, Plaintiff spoke to Beach about Carter's discrimination against her subordinates.

23. In response to her complaint, Beach said Carter "wasn't going anywhere." Plaintiff then submitted a written discrimination complaint internally to Beach, WSSC's General Counsel's Office, Human Resources ("HR") Office, and the Equity, Engagement, and Inclusion/Equal Employment Opportunities Office ("EEO Office") in February 2020.

24. In her internal complaint, Plaintiff outlined her staff's accusations against Carter and attached supporting documentation to aid the investigation. Per WSSC's policy, its EEO Office should have investigated Plaintiff's written discrimination complaint.

25. However, WSSC violated policy and referred the matter to its outside attorney to investigate. Not surprisingly, WSSC's outside counsel's investigation found "no bases to substantiate the staff's allegations of race discrimination."

26. Less than a month later, Beach reprimanded Plaintiff concerning her EEO complaint in June 2020. Specifically, he claimed her EEO complaint violated WSSC's

confidentiality policy because she attached an employee's performance review to the internal written discrimination complaint.

27. Beach also refused to withdraw the June 2020 disciplinary action after the staff person in question acknowledged that Plaintiff had her consent because she asked Plaintiff to include her performance review to support the discrimination claims.

28. A month later, Reid filed a spurious ethics complaint against Plaintiff in July 2020. Although the complaint claimed that Plaintiff violated WSSC's ethics policy by hiring her friends for jobs with WSSC and recommended a two-week suspension, Plaintiff did not have the authority to hire or fire employees at any time.

29. In response to the complaint, Plaintiff denied violating the ethics policy and requested a formal hearing. She also accused Reid of manufacturing the ethics charge in retaliation for her discrimination and ethics complaints against Carter and Beach, respectively.

30. After Reid filed the ethics complaint, Plaintiff and her staff worked from home for over a year due to COVID. In the interim, WSSC did not set a date for the ethics hearing, and Reid continued to pressure Plaintiff to accept the proposed two-week suspension, but Plaintiff refused.

31. During this period, Plaintiff's employment contract was also due to expire in December 2021. However, Reid refused to renew it unless Plaintiff accepted the proposed two-week suspension for the ethics complaint.

32. But for WSSC's Board of Commissioners' (the "Commissioners") intervention in the matter, Reid would have terminated Plaintiff. However, the Board told Reid she had no grounds to do so because Plaintiff had a right to a hearing on the ethics complaint.

33. Due to the Commissioner's input, Reid renewed Plaintiff's employment contract for another three years beginning in January 2022.

34. A month later, WSSC's Commissioners asked Plaintiff, among others, to testify about Cornerstone during a February 2022 Commission meeting. Reid then instructed Plaintiff and others to provide as little information as possible about Cornerstone during the Commission meeting, but Plaintiff refused.

35. Instead, she provided details about Cornerstone's overbilling, waste, and abuses. Specifically, she said Cornerstone overcharged WSSC for long-distance travel costs when local contractors could perform the same services for far less.

36. After the February 2022 meeting, Beach and Carter reassigned Plaintiff's responsibilities to Yvonne Carney (Caucasian), the Director of Strategy and Innovations. They also excluded Plaintiff and her staff from new project meetings she previously managed before she complained about Cornerstone.

37. In February 2022, WSSC held Plaintiff's ethics hearing exposing three compelling facts. First, Reid testified that she could not recall how she learned about the alleged ethics violations against Plaintiff. Second, WSSC witness Rosa Wilson said it was common for employees to recommend their friends for positions, and many employees engaged in the same conduct as Plaintiff. Third, WSSC's former CIO, who supervised Plaintiff, said she did not have the authority to hire new employees at the time of the ethics complaint.

38. Despite this testimony, WSSC's Ethics Board consisting of internal employees, found against Plaintiff. Plaintiff subsequently appealed the decision in June 2020.

39. In June 2022, the Commissioners voted not to renew Reid's contract with WSSC. As a result, they amended Resolution No.: 2016-2133 (the "Resolution") to remove Reid's

delegated authority to "approve all personnel actions, including but not limited to the authority to . . . discharge, set total compensation and terms of employment for all executives and department level positions," effective on July 20, 2022. In other words, Reid could not hire or fire senior-level employees like Plaintiff or delegate the authority to do so to Beach and Carter after July 20, 2022.

40. In response to the Commission's decision, Reid sent a retaliatory letter on or about August 3, 2022, falsely accusing the Commission's misconduct. Reid's letter, sent to Angela D. Alsobrooks and Marc B. Elrich, the County Executives for Prince George's County and Montgomery County (collectively, the Counties) and Calvin S. Hawkins, II, and Gabriel I. Albornoz, the Counties' Chair and President, also blamed Plaintiff for her discharge.

41. On or about August 8, 2022, Plaintiff sent a response letter to the same County officials in Reid's letter and a newspaper reporter.

42. In her letter, Plaintiff reported Carter's discrimination and attached the 2020 internal discrimination complaint. She also accused Reid and Beach of gross mismanagement concerning Cornerstone, alleging that Cornerstone billed WSSC excessively and unnecessarily to fly consultants all over the United States rather than use local consultants. Finally, she stated that Beach had an improper relationship with Black &Vetch, a Cornerstone vendor.

43. About a week after Plaintiff reported these concerns, Carter discharged her on August 16, 2022. He claimed to have done so because she disclosed her discrimination complaint and attachments to the Counties and a newspaper reporter.

44. Carter's personnel action also relied on Plaintiff's disciplinary warning in 2020 to justify her discharge.

45. However, Defendants did not have the authority to terminate management employees like Plaintiff in August 2022 because the Resolution removed Reid's power to take such action or to delegate the authority to others. Due to the Resolution, Carter, Beach, and Reid did not have the power to discharge Plaintiff after July 20, 2022.

46. Moreover, Plaintiff's termination notification violated WSSC provision 9.40.040(a) regarding disciplinary procedures. That provision says managers may consider "disciplinary action within the preceding 12 months." Therefore, Plaintiff's two-year-old written warning from 2020 could not support Defendant's 2022 decision under WSSC's policy.

47. After her discharge, Plaintiff learned that Reid did not discharge a Caucasian male Deputy General Manager named Joseph Mantua ("Mr. Mantua") for violating WSSC's ethics policy like Plaintiff. Specifically, Mr. Mantua secured WSSC contracts and participated in matters involving a contractor that employed his spouse, even after Reid warned him to recuse himself from those matters.

48. Despite Mr. Mantua's ethics violation and previous warnings, WSSC did not discharge him like Plaintiff. Instead, WSSC entered into a settlement agreement with Mr. Mantua on August 8, 2019, allowing him to transfer his duties to other employees without further sanctions, penalties, or disciplinary action.

49. Due to Defendants' actions, Plaintiff lost income and wages and suffered emotional distress, among other damages.

## COUNT I: VIOLATION OF 42 U.S.C. § 1981
## FOR RACE DISCRIMINATION AGAINST ALL DEFENDANTS

50. Plaintiff realleges and incorporates by reference paragraphs 1 through 49 as if fully set forth herein.

51. On or about October 2019 and January 2020, Plaintiff, a Black female, informed Reid and Beach that Carter discriminated against her staff due to race. Neither Reid nor Beach took action to stop Carter's discrimination against them.

52. In February 2020, Plaintiff reported Carter's discrimination to Carter's supervisor Beach, WSSC's attorney, and its EEO and HR offices.

53. Rather than follow its internal policy, WSSC referred Plaintiff's internal discrimination complaint to an outside attorney for investigation. He found that the Black staff's discrimination claims were "unsubstantiated."

54. Defendants then disciplined Plaintiff for filing an internal discrimination complaint by falsely accusing her of violating WSSC's confidentiality policy by disclosing an employee's performance review. However, the employee at issue consented to the disclosure.

55. By comparison, Defendants did not discipline Mr. Mantua, a similarly situated Caucasian male, for repeated violations of its conflict-of-interest policy after several warnings in 2018.

56. Rather than discipline Mr. Mantua, WSSC and Reid signed a settlement agreement with him. They allowed him to transfer the duties that were the subject of the conflict to other employees with no further sanctions, penalties, or disciplinary action.

57. In Plaintiff's case, Defendants did not give her the option to avoid sanctions, penalties, or disciplinary action like Mr. Mantua.

58. Instead, Defendant discharged Plaintiff on or about August 16, 2022, for allegedly violating its confidentiality policy a second time. In doing so, Defendants violated the Resolution, which stripped them of authority to fire management employees like Plaintiff after

9

July 20, 2022. Defendants also violated WSSC's discharge procedure 9.40.040, which prohibited them from relying on the two-year-old prior discipline to discharge Plaintiff.

59. Therefore, Defendants treated Mr. Mantua more favorably than Plaintiff concerning WSSC's discharge policy. Specifically, Mr. Mantua was not discharged after repeated warnings that he had violated WSSC's ethics policy by being involved in decisions for a contractor for whom his wife worked.

60. Plaintiff was discharged after the second alleged incident in two years.

61. Due to Defendants' unlawful discrimination, Plaintiff has suffered economic and compensatory damages for pain, suffering, emotional anguish, and damage to her reputation, justifying an award of monetary damages to be proven at trial.

62. As a result of Defendants' unlawful discrimination against Plaintiff, which was done willfully, was malicious and egregious, and/or done with reckless disregard for Plaintiff's civil rights, Plaintiff seeks punitive damages against them in an amount to be determined at trial.

## COUNT II: VIOLATION OF 42 U.S.C. § 1981
## FOR RETALIATION AGAINST ALL DEFENDANTS

63. Plaintiff realleges and incorporates by reference paragraphs 1 through 62 as if fully set forth herein.

64. In or around October 2019, Plaintiff informed Reid that Carter had repeatedly discriminated against her subordinates because of their race. However, Reid took no action against Carter, and the discrimination continued.

65. In or around January 2020 and February 2020, Plaintiff again reported Carter for race discrimination verbally to Beach, who replied that Carter "isn't going anywhere" and in an internal written discrimination complaint sent to WSSC personnel, including its attorney.

66. In response to Plaintiff's discrimination complaint, Defendants engaged in a pattern of retaliation against her. For example, in June 2020, Defendant Beach gave Plaintiff a written warning for allegedly violating WSSC's confidentiality policy in her internal discrimination complaint after the employee told him she consented to the disclosure. The following month, Defendant Reid filed an ethics complaint against Plaintiff for allegedly improper hiring even though Plaintiff did not have hiring authority.

67. The retaliation continued while Plaintiff worked from home during COVID because Reid refused to renew Plaintiff's employment contract unless she accepted a suspension on the bogus ethics complaint against her.

68. But for Plaintiff's discrimination complaint, Beach would not have disciplined her, and Reid would not have filed the unwarranted ethics complaint against her or refused to renew her employment contract. They did so to retaliate against Plaintiff for her protests of race discrimination and her direct challenge to Defendants' unlawful practices and behavior.

69. As a result of the Defendants' unlawful retaliation against Plaintiff, she has suffered economic and compensatory damages for pain, suffering, emotional anguish, and damage to her reputation, justifying an award of monetary damages to be proven at trial.

70. As a result of Defendants' unlawful retaliation against Plaintiff, which was done willfully, was malicious and egregious, and/or done with reckless disregard for Plaintiff's civil rights, Plaintiff seeks punitive damages against them in an amount to be determined at trial.

**COUNT III: WRONGFUL DISCHARGE AGAINST WSSC**

71. Plaintiff realleges and incorporates by reference paragraphs 1 through 70 as if fully set forth herein.

72. It is a longstanding rule of law in Maryland that an employer may be held liable for the tort of wrongful discharge for terminating an employee in violation of a clearly defined public policy. *Adler v. American Standard Corp.*, 291 Md. 31, 42, 432 A.2d 464, 470-471 (1981).

73. The clearly defined public policy at issue comes from Maryland's Whistleblower statute, Md. Code. Ann. State Pers. & Pens. §§ 5-305, *et seq*. By its terms, the law prohibits WSSC from taking personnel actions against Plaintiff as a reprisal for disclosing information she reasonably believed to be evidence of WSSC's abuse of authority, gross mismanagement, gross waste of money, or violation of law concerning Cornerstone.

74. However, while State employees may recover damages under the Whistleblower statute, Plaintiff may not have any recourse if WSSC is not the State for purposes of the Whistleblower Act. This legal question is unresolved currently.

75. If there is no similar remedy for Plaintiff under the Whistleblower Act, Plaintiff, who, in faithfully fulfilling her fiduciary responsibilities as Chief for IT Governance, reported alleged financial improprieties regarding gross mismanagement and overpayments to Cornerstone and alleged unethical behavior and conflicts of interest exhibited by Defendants Beach and Reid could not recover damages.

76. In the face of Plaintiff's past reports of alleged wrongdoing by Beach, Reid did nothing, despite having a duty to report the alleged conflicts of interest or financial improprieties to WSSC's Commissioners. WSSC also has a duty to manage the funds entrusted to its control responsibly and to avoid conflicts of interest concerning contracts with WSSC.

77. However, Plaintiff brought these grievances to the Commissioners in a February 2022 meeting in which she reported financial irregularities related to Cornerstone, overbilling, and overcharging WSSC for services performable locally for far less money.

78. After that, Plaintiff restated the concerns bought to the Commissioners in her August 4, 2022, letter to the County Executives and legislative officials overseeing WSSC. Plaintiff's letter also reported Beach's possible ethical violations with Black & Vetch, a WSSC contractor working with Cornerstone.

79. Within days of Plaintiff reporting these concerns, WSSC terminated her employment without authority and violated its disciplinary policy.

80. Terminating an employee in a leadership role for fulfilling their duties to WSSC is a breach that requires a remedy.

81. The laws of this State will not tolerate such wrongful conduct.

82. Due to Defendant WSSC's wrongful and abusive discharge of Plaintiff's employment contract, Plaintiff has suffered economic and compensatory damages for pain, suffering, emotional anguish, and damage to her reputation, justifying an award of monetary damages to be proven at trial.

83. As a result of Defendants' wrongful and abusive discharge against Plaintiff, which was done willfully, was malicious and egregious, and/or done with reckless disregard for Plaintiff's civil rights, Plaintiff seeks punitive damages against them in an amount to be determined at trial.

**COUNT IV: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST CARTER, BEACH, AND REID IN THEIR INDIVIDUAL CAPACITIES.**

84. Plaintiff realleges and incorporates by reference paragraphs 1 through 83 as if fully set forth herein.

85. Defendants Carter, Beach, and Reid knew of Plaintiff's employment contract with WSSC for the Chief of IT Governance, for which Plaintiff earned an annual salary of $189,000.

86. Defendants Carter, Beach, and Reid interfered with Plaintiff's contract with WSSC by terminating her employment on August 16, 2022, without authority and in violation of WSSC's disciplinary policy 9.40.040. Defendants Carter, Beach, and Reid lacked authority to discharge Plaintiff because the Resolution stripped Reid of power to terminate management-level employees like Plaintiff, effective July 20, 2022, and she could not delegate the authority after that.

87. As a result, Reid had no power to delegate authority to Beach or Carter to terminate Plaintiff in August 2022.

88. As such, Defendants Beach, Carter, and Reid acted outside the scope of their employment when they discharged Plaintiff.

89. Moreover, since Beach, Reid, and Carter had personal motives for terminating Plaintiff that did not align with WSSC's interests, i.e., that she reported them for discrimination, conflict of interest, and/or gross mismanagement regarding Cornerstone, they intentionally and wrongfully hindered Plaintiff's contract with WSSC.

90. Due to Defendants Beach, Reid, and Carter's wrongful, unauthorized interference with Plaintiff's employment contract, Plaintiff suffered economic and compensatory damages, emotional anguish, and damage to her reputation, justifying an award of monetary damages to be proven at trial.

91. As a result of Defendants Beach, Reid, and Carter's wrongful, unauthorized interference with Plaintiff's employment contract, done willfully, maliciously, and egregiously

and/or with reckless disregard for Plaintiff's civil rights, Plaintiff seeks punitive damages against them in an amount to be determined at trial.

### Count V: CIVIL CONSPIRACY AGAINST DEFENDANTS REID, CARTER, AND BEACH IN THEIR INDIVIDUAL CAPACITIES

92. Plaintiff realleges and incorporates by reference paragraphs 1 through 91 as if fully set forth herein.

93. On information and belief, Defendants Reid, Carter, and Beach met, conspired, and schemed to harm Plaintiff by terminating her employment and causing her special damages.

94. Defendants Reid, Carter, and Beach acted outside the scope of their employment and abused their positions to discharge Plaintiff because the Commission had stripped Reid of authority to terminate or to delegate authority to Carter and Beach almost one month earlier.

95. Before terminating Plaintiff, Defendants Reid and Beach harassed her for several years based on their personal agendas to safeguard their own professional reputations from due criticism regarding Cornerstone and under the influence of such ulterior motives. In addition, they reassigned her projects to a Caucasian female manager in 2022 because she reported their misconduct.

96. As part of the combined effort to harm Plaintiff, Defendants Reid, Carter, and Beach abused their positions by violating WSSC's disciplinary policy, which limited their consideration of prior disciplinary actions to the preceding twelve months. Despite WSSC's policy, Defendants Reid, Carter, and Beach went beyond a year and relied on a previous warning two years earlier to justify firing Plaintiff. Furthermore, Beach unlawfully disciplined Plaintiff in retaliation for her 2020 discrimination complaint against Defendant Carter.

97. By contrast, Mr. Mantua's misconduct was provably wrong and violated WSSC's ethics policies since management warned him to stop several times, but he did not.

98.    Therefore, Defendants Reid, Carter, and Beach subjected Plaintiff to less favorable terms and conditions of employment than the Caucasian male manager.

99.    Defendants Reid, Carter, and Beach's conduct amount to an unlawful civil conspiracy to deprive the Plaintiff of her rights, causing her special damages for which these defendants are liable.

100.    Defendants Reid, Carter, and Beach's civil conspiracy have directly and proximately caused Plaintiff to suffer personal injury, depression, increased stress, and anxiety, as well as other physical ailments for which she has sought counseling and medical treatment, justifying an award of monetary damages to be proven at trial.

101.    As a result of Defendants Beach, Reid, and Carter's civil conspiracy against Plaintiff's employment contract, which was done willfully, maliciously, and egregiously and/or with reckless disregard for Plaintiff's civil rights, Plaintiff seeks punitive damages against them in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against all Defendants for:

A.   Damages of $300,000 or such other amount as determined at the trial of this matter.
B.   Reinstatement to the position of Chief IT Governance Officer; and
C.   Costs, interest, and expenses as required by law.
D.   Plaintiff's attorneys' fees; and
E.   Such other and further relief as this Court deems necessary based on the facts and circumstances of this case.

FURTHERMORE, against the Defendants Reid, Carter, and Beach in their individual capacities, Plaintiff further prays for a separate and appropriate award, as determined by a jury, of all actual and special damages caused by the above alleged civil conspiracy and interference

with contractual relations and an additional award of punitive damages, as well as the attorney's costs and fees associated with bringing this action.

Respectfully submitted,

/*s/Janice Williams-Jones*
Janice Williams-Jones (#25701)
Law Office of Janice Williams-Jones
3201 Rogers Avenue, Suite 301
Ellicott City, Maryland 21043
Ph: 410-203-1246
Lawofficeofjwjones@gmail.com

Counsel for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues.

Respectfully submitted,

/*s/Janice Williams-Jones*
Janice Williams-Jones (#25701)
Law Office of Janice Williams-Jones
3201 Rogers Avenue, Suite 301
Ellicott City, Maryland 21043
Ph: 410-203-1246
Lawofficeofjwjones@gmail.com

Counsel for Plaintiff